## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT BERG, Individually and On Behalf )
of All Others Similarly Situated )
4481 N. 55th St. )
Milwaukee, Wisconsin 53218, )
           ) Case No.  17-CV-379
           Plaintiff, )
           ) JURY TRIAL DEMANDED
     v. )
           ) CLASS ACTION
SAJAN, INC. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )
SHANNON ZIMMERMAN )
c/o Sajan, Inc. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )
ANGELA ZIMMERMAN )
c/o Sajan, Inc. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )
BENJAMIN F. ALLEN )
c/o Sajan, Inc. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )
MICHAEL W. ROGERS )
c/o Sajan, Inc. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )
BENNO G. SAND )
c/o Sajan, Inc. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )
THOMAS MAGNE )
c/o Sajan, Inc. )
625 Whitetail Blvd. )
River Falls, Wisconsin 54022, )
           )

AMPLEXOR USA INC.               )
c/o Sajan, Inc.                     )
625 Whitetail Blvd.            )
River Falls, Wisconsin 54022,    )
                                      )
and                                   )
                                      )
AMPLEXOR FALCON, INC.     )
c/o Sajan, Inc.                     )
625 Whitetail Blvd.            )
River Falls, Wisconsin 54022,    )
                                      )
             Defendants.        )
                                      )

---

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on April 26, 2017 (the "Proposed Transaction"), pursuant to which Sajan, Inc. ("Sajan" or the "Company") will be acquired by Amplexor USA Inc. ("Parent") and Amplexor Falcon, Inc. ("Merger Sub," and together with Parent, "Amplexor").

2.      On April 25, 2017, Sajan's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Amplexor. Pursuant to the terms of the Merger Agreement, shareholders of Sajan will receive $5.83 per share in cash.

3.     On May 12, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Sajan common stock.

9.     Defendant Sajan is a Delaware corporation and maintains its headquarters at 625 Whitetail Blvd., River Falls, Wisconsin 54022.   Sajan's common stock is traded on the NasdaqCM under the ticker symbol "SAJA."

10.     Defendant Shannon Zimmerman ("S. Zimmerman") is a director of Sajan and has served as Chairman, President, and Chief Executive Officer ("CEO") of the Company since 2010.

11.     Defendant Angela Zimmerman ("A. Zimmerman") has served as a director and Chief Operating Officer ("COO") of Sajan since 2010.

12.     Defendant Benjamin F. Allen ("Allen") has served as a director of Sajan since 2011.

13.     Defendant Michael W. Rogers ("Rogers") has served as a director of Sajan since February 2010.

14.     Defendant Benno G. Sand ("Sand") has served as a director of Sajan since 2001.

15.     Defendant Thomas Magne ("Magne") has served as a director of Sajan since 2016.

16.     The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17.     Defendant Parent is Delaware corporation and a party to the Merger Agreement.

18.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Sajan (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable. As of

March 31, 2017, there were approximately 4,796,383 shares of Sajan common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.   Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

26.     Sajan is a leading provider of global language translation and localization

services, helping clients around the world expand seamlessly into any global market.

27.     The foundation of the Company's solution is its industry-leading language translation management system technology, Sajan Transplicity, which provides process automation and innovative multilingual content reuse to ensure schedule predictability, higher quality, and cost efficiencies for its clients.

28.     On November 3, 2016, the Company issued a press release wherein it reported its financial results for the third quarter ended September 30, 2016.  Sajan reported that revenues were $7,522,000 for the quarter, compared to revenues of $7,333,000 for the quarter ended September 30, 2015.  With respect to the financial results, Individual Defendant S. Zimmerman commented:

> We are excited to hit our goals of improved revenue growth and Adjusted
> EBITDA during the quarter.  Our largest clients led the way as we saw aggregate
> revenue growth of 15 percent in this quarter's top 10 accounts. Further, we
> continue to expand our reach and customer base as we experienced healthy new
> client additions during the quarter. Technology improvements and good supply
> chain management resulted in lower translator costs during the quarter and are the
> main reasons for our improved earnings. We expect these trends to continue in the
> future as we focus on driving higher profitability.

29.     On February 10, 2017, the Company issued a press release wherein it reported its financial results for the fourth quarter ended December 31, 2016.  Sajan reported that revenues were a record $7,657,000 for the quarter, compared to $7,496,000 in the fourth quarter of 2015. With respect to the financial results, Individual Defendant S. Zimmerman commented:

> I am pleased with our record performance and continued revenue growth in the
> fourth quarter. Our largest clients were the main contributors as we saw our top
> 20 accounts comprise 74 percent of our fourth quarter revenue. We also took a
> major step in improving our profitability outlook for 2017 in November by
> restructuring our business.

30.     Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate

consideration.

31.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 5.04(a) of the Merger Agreement states:

> (a) The Company shall not, and shall cause its Subsidiaries not to, and shall not authorize or give permission to its and its Subsidiaries' directors, officers, employees, advisors and investment bankers (with respect to any Person, the foregoing Persons are referred to herein as such Person's "Representatives") to, directly or indirectly, solicit, initiate or knowingly take any action to facilitate or encourage the submission of any Takeover Proposal or the making of any proposal that could reasonably be expected to lead to any Takeover Proposal, or, subject to Section 5.04(b), (i) conduct or engage in any discussions or negotiations with, disclose any non-public information relating to the Company or any of its Subsidiaries to, afford access to the business, properties, assets, books or records of the Company or any of its Subsidiaries to, or knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, any Takeover Proposal, (ii) (A) amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of its Subsidiaries or (B) approve any transaction under, or any third party becoming an "interested stockholder" under, Section 203 of the DGCL, or (iii) enter into any agreement in principle, letter of intent, term sheet, acquisition agreement, merger agreement, option agreement, joint venture agreement, partnership agreement or other Contract relating to any Takeover Proposal (each, a "Company Acquisition Agreement"). Subject to Section 5.04(b), neither the Company Board nor any committee thereof shall fail to make, withdraw, amend, modify or materially qualify, in a manner adverse to Buyer or Merger Sub, the Company Board Recommendation, or recommend a Takeover Proposal, fail to recommend against acceptance of any tender offer or exchange offer for the shares of Company Common Stock within ten (10) Business Days after the commencement of such offer, or make any public statement inconsistent with the Company Board Recommendation, or resolve or agree to take any of the foregoing actions (any of the foregoing, a "Company Adverse Recommendation Change"). The Company shall, and shall cause its Subsidiaries to cease immediately and cause to be terminated, and shall not authorize or knowingly permit any of its or their Representatives to continue, any and all existing activities, discussions or negotiations, if any, with any third party

conducted prior to the date hereof with respect to any Takeover Proposal and shall use its reasonable best efforts to cause any such third party (or its agents or advisors) in possession of non-public information in respect of the Company or any of its Subsidiaries that was furnished by or on behalf of the Company and its Subsidiaries to return or destroy (and confirm destruction of) all such information.

32.    Further, the Company must promptly advise Amplexor of any proposals or inquiries received from other parties.    Section 5.04(c) of the Merger Agreement states, in relevant part:

> The Company shall notify Buyer promptly (but in no event later than forty-eight (48) hours) after it obtains Knowledge of the receipt by the Company (or any of its Representatives) of any Takeover Proposal, any inquiry that would reasonably be expected to lead to a Takeover Proposal, any request for non-public information relating to the Company or any of its Subsidiaries or for access to the business, properties, assets, books or records of the Company or any of its Subsidiaries by any third party. In such notice, the Company shall identify the third party making, and details of the material terms and conditions of, any such Takeover Proposal, indication or request. The Company shall promptly (and within forty-eight (48) hours) notify Buyer of the status and material terms of any such Takeover Proposal, indication or request, including any material amendments or proposed amendments as to price and other material terms thereof. The Company shall provide Buyer with at least forty-eight (48) hours prior notice of any meeting of the Company Board (or such lesser notice as is provided to the members of the Company Board) at which the Company Board is reasonably expected to consider any Takeover Proposal. The Company shall promptly provide Buyer with a list of any non-public information concerning the Company's business, present or future performance, financial condition or results of operations, provided to any third party, and, to the extent such information has not been previously provided to Buyer, copies of such information.

33.    Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Amplexor a "matching right" with respect to any "Superior Company Proposal" made to the Company.    Section 5.04(d) of the Merger Agreement provides:

> (d) Except as set forth in this Section 5.04(d), the Company Board shall not make any Company Adverse Recommendation Change or enter into (or permit any Subsidiary to enter into) a Company Acquisition Agreement. Notwithstanding the

foregoing, at any time prior to the receipt of the Company Requisite Vote, the Company Board may make a Company Adverse Recommendation Change or enter into (or permit any Subsidiary to enter into) a Company Acquisition Agreement, if: (i) the Company promptly notifies Buyer, in writing, at least five (5) Business Days (the "Notice Period") before making a Company Adverse Recommendation Change or entering into (or causing a Subsidiary to enter into) a Company Acquisition Agreement, of its intention to take such action with respect to a Superior Proposal, which notice shall state expressly that the Company has received a Takeover Proposal that the Company Board intends to declare a Superior Proposal and that the Company Board intends to make a Company Adverse Recommendation Change and/or the Company intends to enter into a Company Acquisition Agreement; (ii) the Company provides the material terms of the proposed Company Acquisition Agreement; (iii) the Company shall, and shall cause its Subsidiaries to, and shall use its reasonable best efforts to cause its and its Subsidiaries' Representatives to, during the Notice Period, negotiate with Buyer in good faith to make such adjustments in the terms and conditions of this Agreement so that such Takeover Proposal ceases to constitute a Superior Proposal, if Buyer, in its discretion, proposes to make such adjustments (it being agreed that in the event that, after commencement of the Notice Period, there is any material revision to the terms of a Superior Proposal, including, any revision in price, the Notice Period shall be extended, if applicable, to ensure that at least three (3) Business Days remains in the Notice Period subsequent to the time the Company notifies Buyer of any such material revision (it being understood that there may be multiple extensions)); and (iv) the Company Board determines in good faith, after consulting with outside legal counsel and its Company Financial Advisor, that such Takeover Proposal continues to constitute a Superior Proposal after taking into account any adjustments made by Buyer during the Notice Period in the terms and conditions of this Agreement.

34.     Further locking up control of the Company in favor of Amplexor, the Merger Agreement provides for a "termination fee" of $1.5 million, payable by the Company to Amplexor if the Individual Defendants cause the Company to terminate the Merger Agreement.

35.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

36.     The $5.83 merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

37.     Among other things, the intrinsic value of the Company is materially in excess of

9

the amount offered in the Proposed Transaction.

38.     Further, the merger consideration fails to adequately compensate the Company's stockholders for the significant synergies resulting from the merger.

39.     The merger consideration is substantially lower than Amplexor's previous $7.44 per share offer to acquire the Company.

40.     Additionally, the analyses performed by the Company's own financial advisor, Dougherty & Company, LLC ("Dougherty"), confirm the inadequacy of the merger consideration.  For example, Dougherty's *Discounted Cash Flow Analysis* yielded per share value indications for Sajan common stock as high as $6.35.

41.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

42.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

43.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

44.     First, the Proxy Statement omits material information regarding Sajan's financial projections and the financial analyses performed by the Company's financial advisor, Dougherty, in support of its so-called fairness opinion.

45.     With respect to Sajan's financial projections, the Proxy Statement fails to disclose:  (i) unlevered free cash flows and the constituent line items; (ii) capital expenditures; (iii) changes in net working capital; (iv) net operating losses; and (v) taxes.

46.     With respect to Dougherty's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:  (i) the estimated unlevered free cash flows of Sajan for the period from January 1, 2017 to December 31, 2021 as used by Dougherty, and the corresponding definition and constituent line items; (ii) the range of terminal values for Sajan; (iii) Sajan's estimated terminal year EBITDA; and (iv) the inputs underlying the discount rate range of 20% to 22%.

47.     With respect to Dougherty's *Selected Companies Analysis*, the Proxy Statement fails to disclose the book value of debt and the book value of liquid cash and cash equivalents as of March 31, 2017 as provided by Sajan management.

48.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

49.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Special Committee and our Board's Recommendation in Favor of the Merger"; (iii) "Certain Projected Financial Information"; and (iv) "Opinion of Sajan's Financial Advisor."

50.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

51.    Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Sajan's officers and directors, including who participated in all such communications, including those pertaining to the anticipated future employment of S. Zimmerman and the terms of his new employment agreement.

52.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Special Committee and our Board's Recommendation in Favor of the Merger"; and (iii) "Interests of Sajan's Directors and Executive Officers in the Merger."

54.    Third, the Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

55.    For example, the Proxy Statement fails to disclose whether any non-disclosure agreements executed by Sajan and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a

superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

56.    The Proxy Statement also fails to disclose the per-share value of Amplexor's November 5, 2015 offer.

57.    Further, while the Proxy Statement states that Sajan informed "Party B" that the Company had entered into an exclusivity agreement with another party (Amplexor), despite the fact that Party B indicated it could increase its proposal to *$6.25 per share* in January 2017, the Proxy Statement fails to disclose Party B's response as well as the nature of any subsequent communications between Sajan and Party B.

58.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; and (ii) "Reasons for the Special Committee and our Board's Recommendation in Favor of the Merger."

59.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Sajan's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Sajan

60.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61.    The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Sajan is liable as the issuer of these statements.

62.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.   By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

63.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

64.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

65.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

66.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

67.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Amplexor

68.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69.     The Individual Defendants and Amplexor acted as controlling persons of Sajan within the meaning of Section 20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or directors of Sajan and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70.     Each of the Individual Defendants and Amplexor was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.    The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

72.     Amplexor also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

73.     By virtue of the foregoing, the Individual Defendants and Amplexor violated Section 20(a) of the 1934 Act.

74.     As set forth above, the Individual Defendants and Amplexor had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934

Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 16, 2017                    **KERKMAN WAGNER & DUNN**

                                       By: *s/K. Scott Wagner*
                                       K. Scott Wagner (SBN 1004668)
                                       839 N Jefferson St., Suite 400
                                       Milwaukee, WI 53202
                                       (414) 277-8200

                                       *Attorneys for Plaintiff*

16

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Robert Berg ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4.      Plaintiff's purchase and sale transactions in the Sajan, Inc. (NasdaqCM: SAJA) security that is the subject of this action during the class period is/are as follows:

**PURCHASES**

| Buy Date | Shares | Price per Share |
|---|---|---|
| 12/27/16 | 87 | $3.75 |
|  |  |  |
|  |  |  |
|  |  |  |

**SALES**

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.       During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.       Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of May, 2017.

_____
ROBERT BERG